## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-14319-CV-CANNON/MAYNARD

**H.M.,**
individually and as Guardian for H.S.,
an Unemancipated Minor,

      Plaintiff,

v.

**DEPUTY SHERIFF NICHOLAS VINCENT CASTORO,**
in his individual capacity, and
**SHERIFF WILLIAM D. SNYDER,**
in his official capacities,

      Defendants.

_____/

### REPORT AND RECOMMENDATION
### ON DEFENDANTS' MOTION TO DISMISS (DE 7)

      **THIS CAUSE** is before me upon an Order referring all pretrial matters for appropriate disposition.  DE 9.  Presently pending is Defendant Sheriff [William D. Snyder]'s Motion to Dismiss. DE 7.  I have reviewed the Motion and Plaintiff's response in opposition.  DE 11. Defendant Sheriff William D. Snyder ("Sheriff Snyder") did not file a reply, and the time to do so has passed.  Being fully advised, I respectfully recommend that Sheriff Snyder's Motion to Dismiss be **GRANTED** for the reasons set forth below.

### BACKGROUND

      This case concerns allegations of excessive force by Defendant Deputy Sheriff Nicholas Vincent Castoro ("Castoro") when responding to a resident's 911-call reporting two juvenile males walking in the yard and taking items out of yards in the neighborhood.  DE 1.  According to the Complaint filed on August 6, 2021, H.S., the 13-year-old son of Plaintiff, was walking with a 12-

1

year-old friend ("R.S.") in the middle of a residential street, on January 4, 2019, when approached by Defendant Castoro. *Id.* at 3. Defendant Castoro asked for H.S.'s name, and H.S. refused to provide his name. *Id.* Subsequently, H.S. put his hand in his front body pocket. *Id.* Defendant Castoro suspected H.S. was grabbing something inside the pocket and commanded H.S. to remove his hand from the pocket. *Id.* H.S. did not initially comply. *Id.* As Defendant Castoro stepped closer to H.S., H.S. removed his hand from the pocket. *Id.* Defendant Castoro then grabbed H.S.'s wrist. *Id.* During the ensuing struggle, Defendant Castoro slammed H.S. to the ground. *Id.* at 4. As a result, H.S. suffered a fractured skull, collar bone and ribs. *Id.* After the struggle, a pocketknife was discovered. *Id.* H.S. did not open the pocketknife at any time during the interaction with Defendant Castoro nor did H.S. threaten Defendant Castoro. *Id.* Further, at no time did H.S. threaten to flee the scene. *Id.*

Fire Rescue transported H.S. to Martin Marin Memorial Hospital, and H.S. was then transferred to St. Mary's Medical Center for treatment. *Id.* at 5. Prior to H.S. being transferred to St. Mary's Medical Center, Defendant Castoro went to H.S.'s hospital room for additional investigation of the crimes for which he had already placed H.S. under arrest. *Id.* Also, Martin County Sheriff's Officers took a second statement from R.S. concerning Defendant Castoro's arrest of H.S. attempting to have R.S. alter his original statement. *Id.* Following release from the hospital, H.S. suffered ongoing physical and mental injuries, including emotional distress that led to suicide attempts, which were proximately caused and exacerbated by the actions of Defendant Castoro. *Id.*

Consequently, Plaintiff brings two claims. First, Plaintiff brings a claim against Defendant Castoro, individually, for violation of H.S.'s civil rights pursuant to 42 U.S.C. §§ 1983 and 1988.

Second, Plaintiff brings a claim for negligence against Defendant Sheriff Snyder in his official capacity as the Sheriff of Martin County. *Id.* at 5-7.

On September 7, 2021, Sheriff Snyder filed his Motion to Dismiss. DE 7. The Motion to Dismiss has been fully briefed and is now ripe for review.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted. When considering such a motion, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A plaintiff is not required to detail all of the facts on which his or her claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim is and the grounds on which it rests. *Twombly*, 550 U.S. at 555–56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" so as to "nudge [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has explained, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility[.]" *Id.* at 679. In determining whether the plausibility standard has been met, a court must consider the pleading as a whole and must draw on judicial experience and common sense. *Id. See Speaker v. U.S.*

3

*Department of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n. 11 (11th Cir. 2005) (per curiam) (stating that in a Rule 12(b)(6) context, "[w]e read the complaint as a whole").

Although detailed factual allegations are not required, a complaint's allegations must be enough to raise a right to relief above the speculative level. *Id.* The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 662. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## ANALYSIS

Count II of the Complaint alleges negligence against Sheriff Snyder for the negligent actions of Defendant Castoro. DE 1 at ¶50. Specifically, the Complaint alleges that Defendant Castoro "negligently and unnecessarily placed himself in physical contact with H.S. without waiting for the assistance of backup officers," which caused the altercation leading to the injury of H.S. from Defendant Castoro's use of excessive force. *Id.* at ¶51.

Sheriff Snyder contends that principles of sovereign immunity bar Plaintiff's negligence claim. DE 7. In *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917-22 (Fla. 1985), the Florida Supreme Court explained various principles regarding sovereign immunity and governmental tort liability. Specifically, the Court instructed, among other things, that: (1) a duty of care must exist before governmental liability can ensue; (2) Florida's statute, § 768.28, which

provides a limited waiver of sovereign immunity, makes governmental entities liable to the same extent as private individuals under similar circumstances such that duties applicable to private individuals also apply to government entities; (3) there is no common law duty to enforce the law for the benefit of specific individuals or to prevent third parties' misconduct; and (4) certain discretionary functions[1] of government are immune from suit. *Id.* Critical here is that the issue of sovereign immunity "does not even arise until it is determined that [a government] defendant owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989).

To plead negligence, a plaintiff must allege facts plausibly showing the existence of four elements: (1) a duty of care, (2) breach of that duty, (3) legal or proximate causation, and (4) actual damages. *Anderson v. Snyder*, 389 F.Supp.3d 1082, 1090 (S.D. Fla. 2019) (citing *Wallace v. Dean*, 3 So. 3d 1035, 1046, n. 18 (Fla. 2009)). Plaintiff offers no basis in law for the position that Sheriff Snyder and his deputies have a duty under Florida law to call or wait for back up before making contact with a suspect. I found no Florida cases specifically articulating such a duty, and Florida case law generally addressing the manner in which government entities handle investigations suggests no such duty exists. *See, e.g., Pritchett v. City of Homestead*, 855 So.2d 1164, 1165 (Fla. 3d DCA 2003) (stating that the duty to enforce the law is owed to the public and not to individual citizens; therefore, law enforcement's negligent conduct of an investigation did not give rise to a claim); *Fernander v. Bonis*, 947 So. 2d 584, 590 (Fla. 4th DCA 2007) (plaintiff "failed to establish that the police owed him a duty to conduct [a] polygraph examination . . . in a non-negligent

---

[1] *Trianon* explains that no governmental tort liability lies for discretionary governmental functions, such as enforcement of laws or decisions regarding capital improvements, because there has never been a common law duty of care relative to these activities; however, liability may lie relative to operational functions such as maintenance of property under the government's control or the provision of services for the welfare of citizens. *Trianon*, 468 So.2d at 917-22. There are common law duties applicable to private persons relative to maintaining property and performing medical and other services; therefore, common law duties of care also apply to governmental entities, and governmental liability lies with respect to these operational functions. *Id.*

manner");  *Lovett v. Forman*, 883 So. 2d 319, 320 (Fla. 4th DCA 2004) (finding that maintaining records is undertaken for the public generally and governmental liability did not arise from Clerk of Court error resulting in wrongful arrest and incarceration of plaintiff because there was no special duty owed); *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004) (finding no duty of care owed to plaintiff relative to the Florida Dept. of Highway Patrol's internal policies);  *City of Orlando v. Kazarian*, 481 So. 2d 506, 507 (Fla. 5th DCA 1985) (finding that plaintiff's claim against a city pertaining to negligence in the investigation and handling of an altercation with his neighbor was barred because no special duty of care was owed to plaintiff); *Everton v. Willard*, 468 So. 2d 936, 937 (Fla. 1985) ("[T]he decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit, regardless of whether the decision is made by the officer on the street, by his sergeant, lieutenant or captain, or by the sheriff or chief of police.").  Thus, given the lack of a duty, Count II fails to state a claim on which relief may be granted.

In responding to the motion to dismiss, Plaintiff asserts that Sheriff Snyder is liable because Defendant Castoro's excessive force constituted a battery committed while Castoro was acting in the course and scope of his employment.  Florida law is clear, however, that an action for negligence cannot be based upon the commission of a battery—an intentional tort.  *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009) ("[I]t is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force."); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012) (Moore, J.) (holding that, under Florida law, "it is improper to state a claim for negligence premised solely on the defendant's alleged commission of an intentional tort"); *Est. of Osorio v. Miami-Dade Cty.*, 191 F. Supp. 3d 1366, 1368 (S.D. Fla. 2016) (Scola, J.) ("[N]o cause of action for the negligent use of force exists

6

under Florida law."). As a result, Plaintiff cannot maintain a negligence claim against Sheriff Snyder on these grounds. *See Lewis*, 260 F.3d at 1263 (holding that a negligence claim must pertain to something other than the use of force).

Plaintiff relies on *Hennagan v. DHSMV*, 467 So. 2d 748 (Fla. 1st DCA 1985) for the proposition that an officer's use of excessive force can exceed the officer's authority but still be within the scope of his employment and *McMillan v. Dep't of Corr.*, No. 5:13-CV-292-WS-GRJ, 2016 WL 4059230, at *4 (N.D. Fla. July 8, 2016), *report and recommendation adopted*, No. 5:13CV292-WS/GRJ, 2016 WL 4059679 (N.D. Fla. July 27, 2016) for the proposition that an employer cannot avoid vicarious liability just because the employee's act is illegal. These cases are distinguishable because they involved claims for vicarious liability against government employers based on intentional acts committed by their employees. In *Hennagan*, while on duty, a highway patrol officer molested a minor child, and her guardian brought suit against the defendant employer. 467 So. 2d 748. In *McMillan*, an inmate sued a correctional institution after being sexually assaulted by a correctional officer within the institution's employ. 2016 WL 4059230, at *1-2. The issue in these cases was whether the defendant employers could be held vicariously liable for the intentional torts of their employees. 467 So. 2d 748; 2016 WL 4059230. Whether liability arose for the governmental employer turned on whether the employees were acting within their scope of employment. *Hennagan*, 467 So. 2d at 750; *McMillan*, 2016 WL 4059679, at *2. Here, the issue is not whether Castoro was acting outside the course and scope of his employment. Rather, the issue is that Plaintiff has brought a claim for negligence and no duty of care exists under Florida law. Further, to the degree that Plaintiff's Response suggests the negligence claim in Count II is based on Castoro's use of excessive force (DE 11), a negligence claim cannot be based on an intentional tort.

Thus, for the above reasons, I find Sheriff Snyder's Motion to Dismiss is due to be granted without prejudice.  I recommend Plaintiff be given an opportunity to amend to replead a viable claim for vicarious liability against the Sheriff.

## CONCLUSION

**ACCORDINGLY**, this Court recommends to the District Court that Sheriff Snyder's Motion to Dismiss (DE 7) be **GRANTED** without prejudice.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 14th day of April, 2022.

_____

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE