UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CV-14319-CANNON/MCCABE

H.M.,
individually and as Guardian for H.S.
an Unemancipated Minor,

    Plaintiff,

v.

DEPUTY SHERIFF NICHOLAS VINCENT
CASTORO, in his individual capacity,

    Defendant.
_____/

## REPORT & RECOMMENDATION

This is an excessive force case arising from the arrest of a thirteen-year-old minor (hereafter "Minor") by Defendant (hereafter "Deputy") on January 4, 2019. Plaintiff, as guardian of Minor, alleges Deputy used excessive force in making the arrest, thereby violating Minor's Fourth Amendment rights and giving rise to a cause of action under 42 U.S.C. § 1983. Deputy has filed a Motion for Summary Judgment ("Motion"), arguing the undisputed facts show Deputy did not violate Minor's Fourth Amendment rights and the doctrine of qualified immunity protects Deputy from liability (DE 40). On December 13, 2022, United States District Judge Aileen M. Cannon referred the Motion to the undersigned (DE 51). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion (DE 40) be **GRANTED**.

**I.    SUMMARY JUDGMENT STANDARD**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district

court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Also, the Court also must resolve ambiguities and draw justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

II. **UNDISPUTED FACTS**

On or about January 4, 2019, Minor and his twelve-year-old friend (hereafter "Friend") were walking through a residential community in Jensen Beach, Florida (DE 42 ¶ 3; DE 41 & 44

¶ 31; DE 44-3 at 16-18).[1]  At or around the same time, a local resident called 911 to report two juvenile males walking through her yard and removing items from other yards in the neighborhood (DE 42 ¶ 4).  At 5:24 p.m., Deputy responded to the call, believing it to be some kind of trespassing or disturbance (DE 42 ¶ 5; DE 41 & 44 ¶¶ 31-32).  At all relevant times, Deputy worked for the Martin County Sheriff's Office ("MCSO") and acted under color of state law (DE 42 ¶ 1).

Once inside the neighborhood, Deputy observed Minor and Friend, who matched the description from dispatch, walking on a residential roadway (DE 41 & 44 ¶ 33).  Deputy parked his patrol car and exited as the two boys walked towards him (DE 41 & 44 ¶ 34).  Deputy was in full MCSO uniform, and Minor knew Deputy was a police officer (DE 42 ¶¶ 7-8).  Neither boy attempted to run (DE 41 & 44 ¶ 34).

While standing in the roadway near a grassy area, Deputy asked the two boys their names (DE 42 ¶¶ 6, 9; DE 41 & 44 ¶ 34).  Friend cooperated with Deputy by giving him his name, but Minor did not (DE 42 ¶ 10).  Minor then put his hand(s) into the front pocket of his "hoodie," which had a large pocket across the front such that both hands could be placed inside and touch one another (DE 42 ¶¶ 11-12).  Deputy told Minor to remove his hand(s) from the pocket, but Minor refused (DE 42 ¶ 13).  Friend heard Deputy ask Minor several more times to remove his hand(s) from the pocket (DE 41 & 44 ¶ 18).  Deputy recognized, based on his training, that hands in pockets can be a potentially dangerous situation (DE 41 & 44 ¶ 15; DE 44 – Deputy Depo at 44-45).  Deputy suspected Minor might be grabbing something inside the hoodie pocket (DE 41 & 44 ¶ 14).

---

[1] The parties' Joint Statement of Material Facts is located at docket entry 42; Plaintiffs' Statement of Material Facts is located at docket entry 44; Defendant's Statement of Material Facts is located at docket entry 41.

Deputy tried to physically remove Minor's hand from his hoodie pocket and grabbed Minor's wrist (DE 41 & 44 ¶¶ 18, 19; DE 44-3 – Friend Depo at 28). A struggle or scuffle ensued (DE 41 & 44 ¶ 19; DE 44-3 – Friend Depo at 30). Deputy tried to place handcuffs on Minor's wrists, but Minor refused to cooperate (DE 41 & 44 ¶ 20). Minor testified at deposition that, "Deputy had both [of] my hands, trying to put [my hands] behind me to arrest me … [and] … I wasn't letting him because I felt like I shouldn't be getting arrested." (DE 44-5 – Minor Depo at 61).

The struggle or scuffle escalated into a "tackle" or "something like a kind of wrestling move," whereby Deputy picked up Minor and slammed him to the ground (DE 41 & 44 ¶¶ 26, 39). The altercation happened quickly (DE 41 & 44 ¶ 21). At the time, Deputy weighed approximately 250 pounds (DE 41 ¶ 28), and Minor weighed only 120 pounds (DE 42 ¶ 28; DE 41 & 44 ¶ 36).

Deputy then handcuffed Minor, placed him under arrest, and recovered a pocketknife that had been inside the hoodie pocket (DE 41 & 44 ¶¶ 43-45; DE 44-5 – Minor Depo 30-32, 62, 71; DE 44-3 – Friend Depo at 35). Minor never brandished the pocketknife or took it out of the hoodie pocket prior to arrest (DE 41 & 44 ¶¶ 43-45). Indeed, the pocketknife remined inside the hoodie pocket, with blade closed, until after the takedown by Deputy (DE 41 & 44 ¶¶ 43-45).

During the takedown, Minor struck the pavement with such force that it fractured his skull, sinus bone, collar bone, and ribs, resulting in a five-day hospital stay (DE 41 & 44 ¶ 40; DE 44-1 – Deputy Depo at 66; DE 44-6 – Guardian of Minor Depo at 65; DE 44-7 – Medical Record; DE 44-8 – Photos of Injuries). The altercation also left Minor with an immediate, visible contusion or "black eye," and the Court has reviewed photographs of this injury (DE 44-8 – Photos of Injuries). However, the record lacks evidence of further medical treatment following Minor's release from the hospital and initial medical follow ups (DE 44-7 – Medical Record; DE 44-6 – Guardian of

Minor Depo at 73). Minor complains of headaches and memory problems but is not sure whether these symptoms relate to the incident (DE 44-5 – Minor Depo at 77-82).

Following the arrest, the State filed two juvenile charges, known as "delinquency" charges, against Minor: Count 1 for aggravated assault on a law enforcement officer, and Count 2 for resisting an officer with violence (DE 42 ¶ 29; DE 41-4 - Petition). A state court judge ultimately adjudicated Minor delinquent on a lesser charge of resisting an officer without violence (DE 42 ¶ 30; DE 44-5 – Minor Depo at 32-33; DE 44-6 – Guardian of Minor Depo at 61-62).

### III. ANALYSIS

Plaintiff, as guardian of Minor, brings this case pursuant to 42 U.S.C. § 1983, which provides a remedy when a person acting under color of state law deprives another of a right, privilege or immunity secured by the Constitution, laws, or treaties of the United States. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (describing the standard for a § 1983 claim). Here, Plaintiff alleges Deputy violated Minor's Fourth Amendment rights by using excessive force during the January 4, 2019 arrest (DE 28). Deputy filed the instant Motion, urging the Court to enter summary judgment because (1) the undisputed facts show Deputy did not violate Minor's Fourth Amendment rights, and (2) the doctrine of qualified immunity protects Deputy from liability. The Court will address these arguments in reverse order.

#### A. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (cleaned up). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up).

Qualified immunity is a question of law to be decided by the court. *Courson v. McMillian*, 939 F.2d 1479, 1486-88 (11th Cir. 1991). When a defendant raises qualified immunity at the summary judgment stage, the Court must view the evidence in the light most favorable to the plaintiff. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (at summary judgment, the court "cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances."); *see also Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007) ("At the summary judgment stage, ... once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [the officer's] actions ... is a pure question of law") (cleaned up).

To be eligible for qualified immunity, a defendant must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). Once the defendant makes this showing, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Id.* at 1264. In order to meet this burden, the plaintiff must satisfy a two-step test: (1) he must show the defendant committed a constitutional violation, and (2) he must show the constitutional right at issue was "clearly established" at the time of the violation. *Id.* Both prongs of the test must be satisfied. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

Here, all parties agree Deputy acted under color of state law at time of the alleged violation (DE 42 ¶ 1). Accordingly, the burden now shifts to Plaintiff to satisfy the two-prong test for overcoming qualified immunity. The Court addresses each prong below.

### 1. Did Deputy Commit a Constitutional Violation?

The Fourth Amendment prohibits law enforcement officers from using excessive force when making arrests or investigatory stops. *Graham*, 490 U.S. at 394. An officer's use of force is "excessive" if it is "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. *Id.* at 397 (cleaned up). Reasonableness must be "judged from the perspective of the reasonable officer on the scene" without the benefit of hindsight. *Id.* at 396. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* As such, the Eleventh Circuit recognizes that "the typical arrest involves some force and injury." *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000).

"The constitutional test for excessive force is necessarily fact specific." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) ("Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, we must slosh our way through the fact bound morass of reasonableness.") (cleaned up). To aid in the reasonableness analysis, the Eleventh Circuit has directed courts to consider, among other factors, (1) the severity of the crime; (2) whether the individual posed an immediate threat to the safety of the officers or others; (3) whether the individual actively resisted arrest or attempted to evade arrest by flight; (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury. *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1339 (11th Cir. 2020) (cleaned up). The Eleventh Circuit Pattern Jury Instructions repeat these same

7

six (6) factors for juries to analyze in excessive force cases. Eleventh Circuit Pattern Jury Instruction (Civil) § 5.4.

With the applicable factors in mind, the Court finds that Deputy committed no Fourth Amendment violation in this case. Factors two (2), three (3), four (4) and five (5) weigh heavily in Deputy's favor. Even when viewing the facts favorably to Plaintiff, Minor displayed a repeated pattern of noncompliance, thereby posing a safety risk to Deputy. According to Minor, "[Deputy] pulled up and was asking us for our names. I said I didn't want to give it to him. And then I put my hand in my pocket. He told me to take my hand down. I said no." (DE 44-5 – Minor Depo at 52). Friend heard Deputy ask Minor several more times to take his hands out of his pocket (DE 41 & 44 ¶ 18; DE 44-3 – Friend Depo at 28). When asked how many times Deputy asked Minor to take his hands out of his pockets, Minor said, "I don't remember. But it's probably more than one time." (DE 44-5 – Minor Depo at 60).

Minor's hoodie contained a large pocket across the front, capable of concealing a weapon. Deputy recognized, based on his training, that a noncompliant suspect with his hands in his pockets posed a safety risk (DE 41 & 44 ¶ 15; DE 44-5 – Deputy Depo at 44-45). Deputy suspected Minor might be grabbing something inside the hoodie pocket (DE 41 & 44 ¶ 14). This suspicion later proved to be true, as Deputy recovered a pocketknife from Minor (DE 41 & 44 ¶¶ 16, 24, 41, 43-44).

At deposition, Minor also admitted that he actively and physically resisted Deputy's attempts to arrest him:

> Deputy had both [of] my hands, trying to put [my hands] behind me to arrest me.
> …
> [When Deputy] was trying to get behind me to arrest me, … I wasn't letting him because I felt like I shouldn't be getting arrested.

(DE 44-5 – Minor Depo at 61).

8

This is not one of the many cases where a plaintiff overcomes qualified immunity by showing that a defendant used force against a compliant, handcuffed, or otherwise defenseless victim. *See, e.g.*, *Lee*, 284 F.3d at 1198 (denying qualified immunity to an officer who slammed an arrestee's head against the trunk of a car even though arrestee never resisted and "posed no threat at all to the officer"); *Slicker v. Jackson*, 215 F.3d at 1233 (denying qualified immunity to officers who repeatedly slammed a handcuffed, nonresisting arrestee's head into the pavement); *Andre v. Biro*, No. 19-62181-CIV, 2021 WL 8972145, at *7 (S.D. Fla. Sept. 30, 2021) (denying summary judgment where officer physically assaulted arrestee while handcuffed in the back seat of a police vehicle).

To the contrary, Deputy applied force here to a suspect who was noncompliant and actively resisting Deputy's attempts to arrest him. The Eleventh Circuit has expressly recognized the use of force to be proper in such circumstances. *See Wate v. Kubler*, 839 F.3d 1012, 1021 (11th Cir. 2016) ("We have held that noncompliance or continued physical resistance to arrest justifies the use of force by a law enforcement officer.").

As to factor five (5), i.e., the amount of force used, Plaintiff argues that "no actions of [Minor] justified the amount of force used by [Deputy]" (DE 45 at 6 ¶ 19). The Court disagrees, as Deputy took Minor to the ground in a single maneuver that happened quickly without additional or repeated acts of force. Under the Fourth Amendment, the use of force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Stephens*, 852 F.3d at 1321. The reasonableness calculus "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Finally, factors (1) and (6), i.e., the severity of the crime and the severity of the injury, weigh in Plaintiff's favor. Deputy responded to a 911 call to investigate relatively non-severe offenses, namely, juvenile trespassing and theft. Likewise, as to injuries, Minor sustained injuries serious enough to warrant a five-day hospital stay. Nevertheless, the Court finds these factors to be non-dispositive and far outweighed by the other factors discussed above.

On balance, and viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff fails to meet the burden to show Deputy committed a constitutional violation by using "excessive" force against Minor. Summary judgment should therefore be granted. *See Nigro v. Carrasquillo*, 663 F. App'x 894, 897 (11th Cir. 2016) (affirming summary judgment where officer used pepper spray against arrestee who was actively resisting); *German v. Sosa*, 399 F. App'x 554, 557 (11th Cir. 2010) (affirming summary judgment where officer used force against arrestee who was actively resisting); *Sanchez v. Obando-Echeverry*, 716 F. Supp. 2d 1195, 1205 (S.D. Fla. 2010) (granting summary judgment where officer used force against arrestee who "was not completely cooperative"); *Cochran v. Glover*, No. 2:05CV73 FTM29DNF, 2006 WL 2024958, at *4 (M.D. Fla. July 17, 2006) (granting summary judgment where officer wrestled plaintiff to the ground, sat on his back, and used a K–9, because plaintiff failed to respond to officer's verbal commands such that officer "had no way of knowing whether he posed a threat").

### 2. Was the Constitutional Right "Clearly Established"?

A plaintiff must satisfy both parts of the two-prong test to overcome qualified immunity. *Gaines*, 871 F.3d at 1208. Given the Court's conclusion that Plaintiff failed under the first prong, the Court need not proceed any further. For the sake of completeness, however, the Court will nevertheless proceed to the second prong, namely, whether the constitutional right at issue was "clearly established" at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 201

(2001) (setting forth the test required to demonstrate that the defendant is not entitled to qualified immunity).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hamilton v. City of Jackson, Ala.*, 261 F. App'x 182, 186 (11th Cir. 2008) (cleaned up). Put another way, Deputy must have fair notice of his conduct's unconstitutionality, derived from at least one of the following sources:

(1) the obvious clarity of constitutional or statutory language;

(2) fact-specific judicial precedents that are not fairly distinguishable; or

(3) principles set forth in case law, even though not tied to particularized facts.

*Lucibella v. Ermeri*, No. 20-82156-CIV, 2022 WL 910302, at *6 (S.D. Fla. Mar. 29, 2022) (citing *Eloy v. Guillot*, 289 F. App'x 339, 346 (11th Cir. 2008)). Absent one of these standards being met, qualified immunity will protect an officer for conduct that falls within the "hazy border between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The Court finds Plaintiff fails to meet the burden imposed by the second prong. Plaintiff has not pointed to any "controlling and materially similar case law [that] declares [Deputy's] conduct unconstitutional." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000). Likewise, the Court finds no "obvious clarity" in the caselaw or elsewhere that would have alerted Deputy of the unlawfulness of his conduct when he confronted Minor's refusal to remove his hands from his pockets and Minor's physical resistance to being handcuffed. Deputy did not have "fair notice" that he would be violating Minor's constitutional rights by taking him to the ground, even forcefully, in those circumstances. *Id.* ("In the context of Fourth Amendment excessive force claims, "unless a controlling and materially similar case declares the official's

conduct unconstitutional, a defendant is usually entitled to qualified immunity."). For these reasons as well, the doctrine of qualified immunity protects Deputy from liability in this case.

**B.    Merits**

Separate and apart from the doctrine of qualified immunity, Deputy also moves for summary judgment on the underlying merits of Plaintiff's § 1983 claim. That is to say, Deputy argues that summary judgment should be granted because the undisputed facts show Deputy did not violate Minor's Fourth Amendment rights as a matter of law (DE 40 at 2). Given the Court's finding as to qualified immunity, the Court need not address this argument. The Court will nevertheless do so for the sake of completeness.

For the reasons set forth in section III.A.1, the Court agrees summary judgment should be entered in Deputy's favor. Applying standards appropriate for summary judgment, and viewing all evidence in the light most favorable to Plaintiff, the Court finds that no genuine issue of material fact remains in this case because no reasonable jury could return a verdict for Plaintiff on the issue of excessive use of force. *See Quigg*, 814 F.3d 1227, 1235 (11th Cir. 2016) ("A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.") (cleaned up); Eleventh Circuit Pattern Jury Instruction (Civil) § 5.4 (setting forth jury instructions for excessive use of force).

**IV.    <u>CONCLUSION & NOTICE OF RIGHT TO OBJECT</u>**

Based on the foregoing, the undersigned **RECOMMENDS** that Deputy's Motion (DE 40) be **GRANTED**. The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and

Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.   28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 10th day of January 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE